## HATCH et al. *v.* ARNAULT et al.

The soil of the roman *viæ publicæ* was public property; but the law in relation to those great works, which were designed to be as permanent as the labour of man could make them, cannot be applied, without modification, to an infant colony, such as Louisiana was while under the dominion of Spain, without population, and a portion of whose soil only was beyond the reach of annual inundation, and where the roads were necessarily such as the changes in the rivers and future settlements would require.

The principle established by the decision in *Renthrop* v. *Bourg*, 4 Mart. 97, that the soil of a highway is public property, cannot be extended to all highways or public roads in this State.

The Code of 1825 distinguishes between *grands chemins* or highways, and *chemins publics* or public roads. The former are of that class of public things, the property of which is vested in the whole nation (Code of 1808, b. 2, tit. 2, art. 6. Code of 1825, art. 444); while the latter may be made on land subject to private ownership. Stat. 12 March, 1818, s. 2. The Code of 1825, cannot be considered as altering the law, on this subject, as it stood at the time of its promulgation, but as declaratory of it. While it recognized the doctrine in *Renthorp* v. *Bourg*, to its proper extent, it established those reservations which became necessary as the country, in its settlement, was continually undergoing changes. The roads, old and new, in this State, are generally what are denominated in the Code public roads hence, it by no means follows, because a road is a public road, that the public has any right to the soil after it has been abandoned. Whether there are roads in this State of the class of *viæ publicæ*, it is not necessary to decide.

The stat. of 10 April, 1805, having required that all judgments should be signed, a judgment rendered while that statute was in force, not signed, cannot have the force of *res judicata*.

The road, known as the Metairie road, extending from the bayou St. John, along the bayou Metairie, to the settlement of Cannes Bruslées on the Mississippi river, was not a public highway of which the soil belonged to the sovereign; and having been abandoned by the public for more than thirty years, during which time the possession of individuals, under their respective titles, has been undisturbed, it can no longer be subjected to public use.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. The material facts in this case are stated in the opinion *infrà*.

*Pepin* and *Preston*, for the plaintiffs. This controversy presents questions of fact and of law. The question of fact is, whether the Metairie road is a public highway, as claimed by the plaintiffs. The judgment of Governor Galvez, in 1779, establishes that it was the king's road, and had been public as long as the memory of man could reach before that period. Again, in 1805, the oldest residents of the country proved that the inhabitants of the german coast were compelled to work upon it by public authority; that it was the shortest road from the coast to the capital; that it was better than the road along the levée : was used not only by horsemen, but also by carriages ; and that Governor Galvez especially, claimed its use during a war. This alone, made it a public road under the express condition of all french and spanish grants, that the sovereign reserved the land necessary for his public roads. The decree of the Superior Court of the Territory of Orleans also established fully that the road was a public road. The act of the Territorial legislature shows that it was an act of expropriation, which of right belongs to every sovereign. The road being deemed by the sovereign indispensible to the public, the inhabitants and defendants were allowed to claim indemnification if the government failed to prove it a public road. Having fully established that it was a public road, no indemnification was allowed. Although it is believed that every inhabitant of the coast appeared and defended the suit, yet, like suits of expropriation of the present time, personal citation was not required. The suit and judgment in this case was, therefore, conclusive upon all who appeared and all who failed to appear, and also is *res judicata* as to all who hold under them. The decree is, that the road of right belongs to the public, and is bind-

ing upon all the inhabitants of that day, and their descendants of the present time. Independent of these solemn judgments after the most able defence, the testimony on the present trial would fully justify a similar judgment. We have thus established, by three judgments of competent courts before the institution of this suit, that the Metarie road from the capital to the Mississippi river was a public road; also by an act of the sovereign legislature of the country, and by the evidence that it had been so by immemorial usage.

Having established it to be a public road, the soil is in the public. This was fully decided in the celebrated case of *Renthrop* v. *Bourg*, 4 Mart. 136, 137. The court say: "We call a public road that of which even the soil is public. We do not take it to be in a public road, as in a private one, the soil of which belongs to another, while we have only the right of walking or driving over it. The soil of a public road is public. The contradistinction between a public and private way, as to the ownership of the soil, is here apparent. Here the idea of the right of the public being incorporeal, a mere right of way is repelled, as well as the corresponding one of the soil being private property, which is said to be the case in private ways. And the distinction between these and public roads is made to consist in this, that in the latter the right of passing over the surface and the ownership of the soil reside in the public." See *Mayor of New Orleans* v. *Metzinger*, 2 Mart. 303. *Mayor of New Orleans* v. *Magnon.* 4 Mart. 3. The plaintiffs, being part of the public, have not only a right of way, but, in common with others, they also have a right to the soil itself.

These are the public roads described in the 1st sec. of the act approved the 12th March, 1818. "Sec. 1, That all roads in this State that have been opened, laid out, or appointed by virtue of an order of any of the police juries in their respective parishes, are hereby declared to be public roads." They do not differ from a street in a city; both are *publici juris*, belonging wholly to the public, and are not susceptible of exclusive possession by any one person. Such a road is entirely different from a servitude. The Civil Code, art. 718, declares: "The right of passage, or of way, is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, on horsebabk, or in a vehicle, to drive beasts of burden or carts, through the estate of another." When this servitude results from the law, the exercise of it is confined to the wants of the person who has it. When it is the result of a contract, its extent and the mode of using it is regulated by the contract. It is not such a right of passage for which we contend, but for a public royal road, the soil and use of which was in the king, for his subjects, from time immemorial, and the grants made no doubt subject to it, not the road subject to the grants.

Having established that the Metarie road was once a public highway, the right which the public had to pass over it cannot be lost by any length of time. This is the doctrine of the english, french, and spanish law. See Las Siete Partidas, tercera Partida, tit. 32, law 23. Best, on Presumption, p. 133, 137. When a road has once been a king's highway, no lapse of time or cessation of user, will deprive the public of the right of passage, whenever they please to resume it. *Rex* v. *James Taunton*, 2 Selw. N. P. 1362, 9 ed. Domat, Lois Civiles, book 3, sec. 5, no. 2, vol. 2, p. 220, Des causes qui empêchent la Prescription, says: "Comme la prescription est une des manières d'acquérir la propriété, on ne peut prescrire que les choses qui sont en commerce, et dont on peut devenir le maitre. Ainsi, on ne peut s'acquérir par la préscription les choses que la nature ou le droit public destinent à un usage commun et public : comme le rivage nécessaire pour la navigation des fleuves, les murs et fossés des villes, et autres lieux semblables. Et on ne peut non plus prescrire ce que les lois rendent imprescriptible, comme l'est en France le domaine du Roi, qu'on ne peut acquérir par une préscription, même de cent ans. Pothier, Traité de la Prescription, no. 7, says : "De-là, il suit, que les choses qui sont hors du commerce, ne peuvent être susceptibles de prescription." Troplong, Prescription, no. 156, *et seq.* says: "Les voies publiques ouvertes par terre, soit qu'elles soient aux frais du trésor et appartiennent à l'Etat, soit qu'elles soient la propriété des communes, font partie du domaine public et sont imprescriptibles."

The law of Louisiana is precisely the same as the french law. When a thing is common property and belongs to the public, as a navigable river, seaport, road, harbor, highway, it is not susceptible of alienation, and therefore is imprescriptible, being a thing out of commerce. Civil Code, arts. 444, 445, 475, 476, 3445, 3463. In *Mayor* v. *Metzinger*, 3 Mart. p. 303, it is said: "That public places, such as roads and streets, cannot be appropriated to private use,

is one of those principles of public law, which required not the support of such arguments."

In the case of *Allard* v. *Lobau*, 3 Mart. N. S. p. 293, the defendant pleaded a possession of fifty years against the right of a public road. But the court said: "The title which the defendant sets up by prescription, remains to be noticed, and in our opinion it presents no obstacle to the present action. Possession cannot be pleaded against the public right, unless it has been immemorial. Novissima Recop. lib. 11, tit. 8, ley 4."

*Labarre* and *Roselius*, for the appellant. 1. The right claimed by plaintiffs is an interrupted servitude, according to arts. 718, 723, 762, and can be established only by a title. *Crossman* v. *Vignaud*, 14 La. 173. They have shown no such title. 2. Had they done so, any claim under such a title would have been extinguished by presumption. C. C. 779, 785. 3. Plaintiffs claim that the road was a royal public road, and rely on the proceedings of Gov. Galvez and those of the Superior Court of the Territory, averring that they have the force of *res judicata*. The proceedings before Galvez, were *res inter alios acta*. The judgment in the Supreme Court was not final. C. C. 3522. 7 La. 579. Rep. de Jurisp. vol. 2, p. 316, *verbo Chose-jugée*. 4. But plaintiffs go farther, and assert that, having established that the Metarie road was once a public road, the right which the public had to pass over it cannot be lost by any length of time.

This proposition is in direct opposition to articles 473, 474 of our Code. The first of those articles says: "Things, in their relation to those who possess or enjoy them, are divided into two classes; those which are not susceptible of ownership, and those which are. Art. 474, says: "Among those which are not susceptible of ownership, there are some which can never become the object of it, as things in common, of which all men have the enjoyment and use. There are things, on the contrary, which, though naturally susceptible of ownership, may lose this quality in consequence of their being applied to some public purpose, incompatible with private ownership, but which resume this quality as soon as they cease to be applied to that purpose, such as the high roads, streets, and public places. These two articles of our Code differ very little from the corresponding articles of the Napoléon Code, upon which we have the opinion of the ablest french commentators. Duranton, vol. 21, p. 253, no. 164, says: "Revenons á l'imprescriptibilité quant aux choses. Celles qui sont consacrées à un usage public, et qu'on appelle pour cela *res publicæ*, échappent nécessairement à l'action de la prescription, *tant que leur destination n'est point changée*." Again, at p. 261, no. 176, says: "Mais quand il s'agit d'un chemin qui a réellement été abandonné depuis de longues années, dont les habitans n'ont fait aucun usage, et à l'égard duquel l'autorité municipale elle-même n'a élevé aucunes réclamations, n'a fait aucun acte conservatoire, la prescription, selon nous, fournit à celui ou à ceux qui ont pris possession de ce chemin, qui l'ont fait servir au rapport, ou à autre chose, qui l'ont, en un mot, possédé exclusivement, et à titre de propriétaire, un moyen légal de se défendre contre les prétensions actuelles des habitans ou de l'autorité municipale elle-même; parceque la chose ayant par là perdu sa destination primitive, son caractère d'utilité publique, elle est rentrée dans le commerce et est ainsi devenu prescriptible; il y a même supposition d'aliénation par la commune, &c."

Vazeille, Traité des Prescriptions, no. 89, says: "Les routes, les chemins et les rues sont des propriétés publiques ou communales, dont l'usage est plus général. Tant qu'ils subsistent, le domaine en est à l'état ou aux communes; la possession à tous les individus. Chacun est libre, en tout temps, d'en user ou de n'en point user, et aucun, par la jouissance, ne peut acquérir plus de droit que les autres. Mais des routes ou des chemins peuvent être abandonnés comme impracticables ou inutiles. Négligés par le public, ils sont bons pour les voisins, qui, en les réunissant à leurs héritages, les acquièrent par prescription."

Troplong, De la Prescription, vol. 1, no. 163, says: "Mais, si la prescription ne peut faire tomber dans le domaine privé une partie quelconque d'une rue, d'une place, d'un chemin public, tant que ces choses conservent dans leur partie principale leur destination publique, en est-il de même lorsque la possession trentenaire les a complétement sonstraites à l'usage public, et les a, pour le total, incorporées à une propriété privée?

"Lorsqu'une chose n'est publique que par une destination factice, elle peut perdre cette qualité par une volonté contraire à celle qui la lui avait donnée, &c. Quand le public se retire définitivement d'une chose, cette chose cesse d'être

publique; elle perd tacitment sa destination; elle n'est plus hors du commerce."

Denisart, vol. 1, p. 457, says: "Mais lorsqu'un chemin est entièremant, abandonné et absolument hors d'usage, le terrain appartient au seigneur haut-justicier du lieu de sa situation. See also *Henderson v. Mayor, &c.* 5 La. 417.

Toullier, vol. 6, page 162, no. 163, says: "Il ne faut pas confondre avec les choses hors du commerce par leur nature, les choses consacrées à des usages publics, les chemins, roues et rues, les édifices publics, les temples, les portes, murs, fossés, remparts et fortifications des places de guerre et des forteresses, etc. etc. La nature n'a point mis ces choses hors du commerce. Elles n'en sont donc point absolument et irrévocablement exclues, mais seulement pendant la durée de leur destination. Si elles ont cessé de servir aux usages publics auxquels elles étaient consacrées, soit par le fait, comme par une longue désuétude, soit en vertu d'une ordonnance royale ou d'une loi, elles rentrent dans le commerce, et peuvent être vendues en suivant les formalités prescrites. Le Code a donc fait une différence sensible et importante entre les choses consacrées à des usages d'utilité publique, qui sont prescriptibles, et les choses que la nature n'a point mises dans le commerce, et que l'art. 2226 déclare imprescriptibles."

The judgment of the court was pronounced by

Eustis, C. J. This is an appeal from a judgment rendered by the Fifth District Court of New Orleans, by which it was decreed that the Metairie Road of right belongs to the public, as far as the river Mississippi, at the place called Cannes Bruslées, as it formerly existed, and directing all obstructions to the free public use of the same to be removed. The appellants are owners of plantations fronting on the Mississippi, through whose lands the road passes, and who have been made defendants in this suit. The plaintiffs allege themselves to be proprietors of land in the parish of Jefferson, situated between Lafayette and the lake.

It is contended, on behalf of the plaintiffs, that having established the road to have been a *public road,* the soil is in the public, on the authority of the case of *Renthorp et al. v. Bourg et ux.,* 4 Martin's Reports, 97. This case was determined in 1816, and it was there held that the part of the roman law which declares the *soil of a highway to be public property,* appeared to be in force in France, and was so in Louisiana when the country passed under the dominion of Spain.

In dissenting from the principle laid down in this decision to its whole apparent extent, we deem it proper to give some reasons for our reservation. A recognition of the doctrine without qualification, at this time, would be considered as an alarming disturbance of private right.

As civilization and improvements have advanced in this State. as the navigation of our water courses has improved, and our lands been explored and reclaimed, new settlements have been established, and new means of passage been required. New roads have consequently been made by public authority, and old ones abandoned. The changes in the banks of the Mississippi necessarily produce the same result, and the old roads about villages have been in many instances enclosed and used as private property. The importance of the subject, with these facts before us, is, therefore, obvious.

The court held that, under the roman law, the soil of the *viæ publicæ* was public property. But the difficulty with us is, in the application of the laws in relation to those great works—the roads of the roman empire—some of which exist to this day, to those of an infant colony like that of Louisiana, without population, and a portion of whose soil only was beyond the reach of annual inundation. Those of Rome were intended to be as permanent as the labor of man could make them, while those in Louisiana would necessarily be such as the changes in the rivers and the future settlements would require.

The authorities on which the soil in a highway was held to be public are, Partida 3, 28, 6; the Code of 1808, p. 94, art. 6; and 3 Martin, 303.

The text of the Partidas authorizes no such conclusion, as to the property in the soil. The commentary of Gregorio Lopez gives no such interpretation to it.

The Code mentions *highways*, as among public things, "the property of which belongs to a whole nation, and the use of which is allowed to all the members of the nation." In the french text the corresponding words are, *les grands chemins ;* and, in the case of *The Mayor* v. *Metzinger*, 3 Martin, 303, nothing more is decided than that, roads and streets cannot be appropriated to private use, and that a grant of either would be void.

That there are *grands chemins*, highways, of which the soil is public property, in the same manner as that of the *viæ publicæ* in Rome, there is no necessity for our determining; but we desire it to be understood that we cannot assent to extending the principle to all highways or public roads throughout the country, and that the doctrine in *Renthorp's* case, is not to be understood as recognized without this limitation.

In support of our opinion that the property of the soil in rural roads in Louisiana is not public, in the sense contended for, the uniform acquiescence of the government and the people in the appropriation of the land to private purposes when a road is abandoned, is a fact entitled to great weight. When the public interests require the direction of a road to be changed, or whenever it becomes useless and is so considered by the proper police authority, the owner of the plantation through which it passes resumes dominion over it, and we have yet to learn that the right has ever been contested. But there is still a stronger reason for the views we hold on this subject, and that is to be found in our legislation, which is in accordance with the uniform acquiescence in the right of the proprietor to resume the land when it is no longer required for a road.

The counsel for the plaintiffs state, in their printed argument, after quoting the above noted authorities, to show that the soil of a public highway is public property : "These are the *public roads* described in the first section of the act, approved the 12th of March, 1818, which provides that all roads in this State that shall have been opened, laid out, or appointed, by virtue of an order of any of the police juries in their respective parishes, are hereby declared to be *public roads*. They do not differ from a street in a city ; both are *publici juris*, belonging wholly to the public, and not susceptible of exclusive possession by any one person." But to this argument the proviso of the second section of that act furnishes an answer. It reads thus :

" Provided also, that nothing in this act shall be so construed as to affect in any manner the rights of individuals to any batture or alluvion already formed on the front of any tract of land, which lies on any navigable river or water course within the limits of this State, nor to prevent any owner of the soil on which a public road shall pass to resume the use and possession of *such soil* whenever said road shall have been abandoned by the public, or shall have been transferred elsewhere with the consent of the owner, and with that of the competent authority."

It results, then, from the terms of this act, which was passed two years after the decision in *Renthorp's* case, that the soil of *public roads* did not always belong to the public, and that the public right was defeasible on the abandonment of the roads.

Our laws underwent a revision in 1825, and the Code of that year contains

some provisions on this subject, which require notice. That Code retained the article of the Code of 1808, which we have quoted, concerning highways. Code of 1825, art. 444. Code of 1808, p. 94, art. 6. These are in the chapters entitled *The Divisions of Things*; and under the chapter of *Servitudes* are the following articles:

Art. 760. Roads are of two kinds, public and private.

701. Public roads are those which are made use of as high roads, *which are generally furnished and kept up* by the proprietors of estates adjacent to them.

702. Private roads are those which are only open for the benefit of certain individuals, &c.

In the *projét* of the Code, to these and art. 703, this remark is appended: " These provisions, which are not in our Code, are of the greatest importance in this State, where the cases mentioned may so frequently occur."

In the french text the terms *chemins publics* are used in articles 700 and 701; and, as we have before noted, in article 444, the word *highways* is rendered in french by the term *grands chemins*. The distinction made by the Code appears to be between *grands chemins*, which is translated highways, and *chemins publics*, which is translated public roads. The former are of that class of public things, the property of which is vested in the whole nation; and the latter may be made on land subject to private ownership.

The roads, old and new, throughout Louisiana, we believe generally to have been what are denominated in the Code public roads. Hence, it by no means follows, that because a road is a public road that the public has any right to the soil, after it shall have been abandoned. That there are in the country roads of the class of *viæ publicæ* we are not under any necessity of contesting; and, having placed what we conceive to be necessary and proper limits to the application of the decision in *Renthorp's* case, we proceed to the consideration of the present case.

Have the plaintiffs established that the Metairie road to the river Mississippi, as described in their petition, was a highway, the soil of which is in the public, is the first question to be examined. The plaintiffs contend that the affirmative of this proposition is proved by the evidence adduced by them. They rely upon a decree or judgment rendered by Galvez, the governor general of Louisiana, in 1779, in certain proceedings instituted by the commandant of the settlement of the Germans against *Pascalis de Labarre*, in order to compel the latter to restore a bridge, which he had destroyed, on this road. It is true that in the decree of the governor, the road is recognized as a *royal road*, as is stated in the argument of the counsel, but we do not find that the question as to the property in the soil was determined, or even mooted, in those proceedings, the only question being as to the public right to the road. *Labarre* was condemned to replace the bridge, but we cannot infer from what was then done. any thing more than the recognition of the public right by the governor; still less can we conclude that this road was of a different character, as to the property, from the ordinary public roads in the country.

By an act of the Legislative Council of the territory of Orleans, of the 28th of February, 1805, entitled " An act *for opening* the road called the Matairie, &c.," the attorney general was directed to present to the Superior Court a petition, setting forth that the road had been long of right used and occupied as a public road, and praying that the court would decree that the said road belonged to the public, and that the same might not be in future obstructed in consequence of the unfounded claims of individuals. Under this statute an in-

quest was had, at the instance of the attorney general. On the minutes of the court, under date of the 11th of February, 1806, this entry is made in the case: " Upon hearing the claims of the parties, it is decreed that, the said road belongs of right to the public." The attorney general claimed the road as having been long of right used and occupied as public highway, and prayed that it might be decreed to belong to the territory. Several of the owners of plantations through which this road passed resisted the claims thus set up, by a formal protest and answer. It appears that witnesses were examined on both sides, and that the case was several days on trial; but there is no evidence of any judgment having been rendered, except the extract from the minutes just given. The practice act of 1805 required all judgments to be signed. No judgment having been signed in this case, there is no *res judicata*. The only effect we can give to the act of the Legislative Council, and the proceedings under it, as facts existing at the time, is to consider them to be in affirmance of the decision of the governor general that, the Metairie road to the Mississippi was a public road.

It must be observed that, the proprietors of the plantations through which this road passed, from time to time, resisted, or obstructed its establishment, as the intervention of the public authority in 1779, and in 1805, sufficiently proves. It was a subject of contention which has become not the less difficult to solve as its origin has become more remote, and the facts in relation to it less easy to be ascertained by evidence.

Taking it, therefore, as fully proved that, the road in question was a public road, to which class does it belong? We have not considered the Code of 1825 as altering the law as it stood at that time, but as declaratory of it, and while it recognized the doctrine in *Renthorp's* case to its proper extent, established those reservations which were necessary, as the country in its settlement was continually undergoing changes. Article 444 provided that highways, great roads, *viæ publicæ*, were public things; and article 701 that, *public roads* were those which are made use of as high roads, which are generally furnished and kept up by the proprietors of estates adjoining them. Article 661 provides that, services imposed for the public or common utility, relate to the space which is to be left for the public use, by the adjacent proprietors, on the shores of navigable rivers, and for the making and repairing of levées, roads, and other public or common works.

There is nothing before us which distinguishes this road from any of the public roads in the country. In the early settlement of the colony it may have been much frequented, but, as the lands on the river were occupied, its utility diminished, and, for more than thirty years, it has been abandoned.

There is great force in the position which the proprietors of lands through which this road passed have invariably maintained in relation to their rights as owners. This road is one of the oldest in the colony; and, if it was intended to reserve it to the crown in property, as a *grand chemin*, or permanent highway, it is very singular that no mention was made of it in the original grants and titles which run from the Mississippi to the lake, without any exception or reservation. A survey has been shown, made by the surveyor general in 1803, in which the road is marked as *chemin de la Metairie*. On being examined on the inquest, had in 1806, and being asked whether, in the titles of the lands of the inhabitants which had passed through his hands, there was any indication of such a road, he answered: " Never having had any instructions from the governor upon this subject, and believing the road to be a public road, *I have always*

*marked it* in those titles of land which have passed through my hands." No title has been exhibited other than the survey mentioned. It is a fact, which we are not permitted to overlook, that this road, which it is attempted to assimilate, as to its character, to the great roads of the roman empire, was never reserved by any act of the sovereign power as part of the domain, in any grants of land adjacent to, or in its vicinity, nor designated by land-marks or admeasurement in any ancient plan, as streets and public places always are ; nor was it constructed and kept up in any manner indicating permanency, or distinguishable from an ordinary road. It has none of those characteristics in its origin, history, construction, or purpose, which accompanied those monuments of enterprize and labor, which, to this day, bear witness to the greatness of that wonderful people, whose institutions and works were not only organized for domestic prosperity, but extended to her colonies as elements of universal dominion.

HATCH
*v.*
ARNAULT.

The plaintiffs' claims rest upon the occupation and use of the public road during a time sufficient to establish the public right to it as a public road, but they have shown no right of the public to the soil. The road has been since abandoned by the public for more than thirty years, during which time the possession of the defendants under their titles has been undisturbed. The main road on the river they have kept up; 'this road has gone into disuse. The public authorities do not attempt to reëstablish it ; as far as they are concerned, it has been rightfully resumed by the proprietors of the soil, and is no longer for the use of the public.

The judgment of the District Court is, therefore, reversed, and the plaintiffs' petition dismissed, with costs in both courts.