390 So.2d 851 (1980)
DeEtte Barber GARRETT et al.
v.
PIONEER PRODUCTION CORPORATION et al.
Nos. 66968, 66970.
Supreme Court of Louisiana.
November 10, 1980.
*852 Cassidy & Millican, F. Jefferson Millican, Jennings, Liskow & Lewis, Robert T. Jorden, Lawrence P. Simon, Jr., and Kerry M. Massari, Lafayette, for defendants-applicants in 66968; for defendants-respondents in 66970.
A. N. Yiannopoulos, Baton Rouge, Seidel & Bailey, George W. Hardy, Fred K. Bailey, Lafayette, for plaintiffs-respondents in 66968 and for plaintiffs-applicants in 66970.
DIXON, Chief Justice[*]
This petitory action was brought to determine the various parties' ownership and mineral rights in property underlying certain streets in the City of Jennings, Louisiana. The plaintiffs include claimants to title and their lessees; the defendants are the City of Jennings and its lessees. Both *853 groups claim to hold a valid interest in the mineral rights. Essentially, the controversy involves two disputes: whether the streets were dedicated to public use by the plaintiffs' ancestors in title so that full ownership is in the city and, if not, whether the leases held by the defendants-lessees should be dissolved. All parties applied for review of the decision of the Court of Appeal. Garrett v. Pioneer Production Corp., 378 So.2d 945 (La.App.3d Cir. 1979).
The plaintiffs' ancestors in title, Amanda and Austin Barber, acquired title to two tracts of land known as Barber's Addition and Barber's Subdivision in 1891 and 1901. Their titles can be traced to the sovereign. Beginning in 1901, the Barbers sold parcels of land in the addition and subdivision, regularly designating the lot and block number in the act of sale. In 1905, plats were recorded for both Barber's Addition and Barber's Subdivision. No signatures appear on these plats, and it is not known who filed them. Subsequent to the recordation, some lots were sold by the Barbers with reference to the plats, while other lots were sold without any such reference. In 1910, the Calcasieu Parish Courthouse was destroyed by fire;[1] many of the records relevant to this case are taken from the files of a Lake Charles abstractor.
It is the defendants' contention that the filing of the plats, pursuant to Act 134 of 1896,[2] effected a statutory dedication of the streets to public use, vesting full ownership in the city of all streets appearing on the plats. Alternatively, the defendants argue that a formal, nonstatutory dedication occurred, again vesting full ownership in the city. The plaintiffs' position is that the filing of the plats was not proved to have been performed by the owners of the land, and that the plats themselves are not in substantial compliance with the statute. While plaintiffs concede that some form of dedication occurred, they argue that a nonstatutory, implied dedication merely gives the public a servitude on the property, not ownership.
Act 134 of 1896 (basically the same as R.S. 33:5051) stated:
"Section 1. Be it enacted by the General Assembly of the State of Louisiana; That whenever the owner or owners of any real estate situated in this State shall desire to lay off the same into squares or lots with streets or alleys between such squares or lots and with the intention of selling or offering for sale any of said squares or lots it shall be the duty of such owner or owners of such real estate, before selling any square or lot or any portion of same, to cause to be made and filed in the office of the Keeper of Notarial Records of the parish wherein such property is situated and copied into the Conveyance Record book of such parish, a correct map of the real estate so divided, which said map shall contain the following:
1. The section township and range in which such real estate lies or subdivision thereof according to government survey.
2. The number of squares by numerals from 1 up, and the dimensions of each square in feet and inches.
3. The number of each lot or subdivision of a square and its dimensions in feet and inches.
4. The name of each street and alley its length and width in feet and inches.
5. The name or number of each square or plat dedicated to public use.
6. A certificate of the Parish Surveyor of the parish wherein the property is situated in the correctness of the map.
7. A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use.

*854 Sec. 2. Be it further enacted, etc., That any person or persons, agent or attorney in fact who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction before the District Court shall be fined not less than ten dollars nor more than five hundred for each offense.
Sec. 3. Be it further enacted, etc., That it shall be the duty of all clerks and exofficio recorders and notaries public in all the parishes of this State, the parish of Orleans excepted, to refuse to place on record any deeds of sale of property coming under the provisions of this act, until the provisions of this act shall have been complied with; and to report to the District Attorney all violations of this act."
The statute only speaks of dedication "to public use." It does not explain or define the nature of the right acquired by the public through dedication. In fact, the legislature of this state has never enacted a comprehensive scheme of dedication to public use. For this reason, the subject of dedication has been a controversial one, and the task has fallen to the courts to decide the nature and effect of dedication.
Before Act 134 was enacted, the issues of dedication to public use and the nature of the public's interest in public property were frequently litigated. Consistent with provisions of the Civil Code, and relying upon Roman, French and Spanish law, the earliest reported decisions squarely held that the soil underlying public roads was owned by the public. Morgan v. Livingston, 6 Mart. (O.S.) 19 (1819); Renthorp v. Bourg, 4 Mart. (O.S.) 97 (1816); Mayor, Etc., of New Orleans v. Metzinger, 3 Mart. (O.S.) 296 (1814). However, confusion arose as to what constituted a "public road." Hatch v. Arnault, 3 La.Ann. 482 (1848), discounted the applicability of ancient Roman law on the subject, observing that the roads in the "infant colony" of Louisiana were simply not comparable to Roman highways, "as permanent as the labor of man could make them." 3 La.Ann. at 485. This reasoning took into account the fact that roads in Louisiana were often washed away by inundation and the changing of river courses, and were sometimes abandoned along with the settlements they served. The court believed that the majority of roads in Louisiana could be classified according to the French system as "chemins publics," constructed on land subject to private ownership. The court conceded that a few "grands chemins," or highways, existed in Louisiana, and recognized that these roads were subject to public ownership. This decision obviously limited the principle set forth in earlier cases establishing public ownership of public roads. Note, "The Effect of Dedication to Public Use in Louisiana," 13 Tul.L.Rev. 606 (1939). By its own terms, however, the reasoning employed in the decision is now archaic. Were we to classify the ownership of roads in terms of their relative permanence, the large majority of roads in Louisiana, privately owned or otherwise, could be classified as "grands chemins." We do not believe that the matter of ownership can be determined by the relative stability of road beds; nor do we believe that the obscure distinction between "chemins publics" and "grands chemins" is of continuing vitality.
However, the Civil Code does appear to make some distinction between different types of roads. C.C. 454 and 458 (1870) classify city streets as public property. C.C. 453 and 482 (1870) refer to "roadsteads," "highways," and "high roads," apparently classifying them as public property as well. To the contrary, C.C. 658 (1870) deals with "public roads" that are built on the soil of privately owned estates, declaring that the public is limited to a servitude of use over such property. The indication given in this article that such "public roads" are largely rural is borne out by early jurisprudence. Landry v. Gulf States Utilities Co., 166 La. 1069, 118 So. 142 (1928); Hatch v. Arnault, supra. Different results were obtained in the case of urban areas such as city streets, public squares and quays. City of Shreveport v. Walpole, 22 La.Ann. 526 (1870); City of Baton Rouge v. Bird, 21 La.Ann. 244 (1869); Pickett v. Brown, 18 La.Ann. 560 (1866). In these cases the courts clearly found that the ownership of public places was in the public; the public interest was *855 not limited to a servitude. Whatever ambiguities may exist in decisions prior to the passage of Act 134, there can be no doubt that the prevailing view was that ownership of municipal streets would ordinarily vest in the public body. These early decisions are also informative as to the nature of the interest acquired by the public when property was dedicated to public use. In Pickett v. Brown, supra, and City of Shreveport v. Walpole, supra, the area disputed by the parties was a tract of land between Commerce Street and the Red River, in the City of Shreveport. The original incorporators of the city had designated this particular property as "open space" on a map which was filed along with an act of partition. No use was ever made of this property except by the city. Both courts, considering all the circumstances, concluded that the original owners of the tract intended to dedicate the property to public use, and affirmed the city's title to the property. The same result was reached in City of Baton Rouge v. Bird, supra, where the ownership of public squares was in question. Once the intent to dedicate was inferred from the circumstances of the case, the court had no difficulty in deciding that title should vest in the public. In cases where no intent to dedicate was found, the courts uniformly held that the property in dispute was subject to private ownership. Leland University v. City of New Orleans, 47 La. Ann. 100, 16 So. 653 (1895); Mendez v. Dugart, 17 La.Ann. 171 (1865); Municipality No. 2 v. Orleans Cotton Press, 18 La. 122 (1841). Significantly, all of these decisions deal with property within municipalities, such as city streets and public squares.
From the foregoing we conclude that public ownership of property dedicated to public use is sanctioned by the Civil Code and was generally favored by law before the passage of Act 134 of 1896, especially with regard to property within municipal limits. It is relevant to note that prior to the advent of the mineral industry in Louisiana, the subject of public ownership of dedicated property was important only insofar as it governed the use to which dedicated property could be put. By itself, ownership of the soil underlying public streets was of no economic value. If dedicated property was exclusively subject to public use, there was no reason for the original owner to attempt to retain ownership while granting the public a servitude, since the economic value of the property was thought to consist entirely in its surface use rather than in the minerals below. Property owners were simply not concerned with retaining ownership of the soil underlying a road except to the extent that they could reclaim the surface use of the property. This was especially true in the case of municipal streets and public squares, since there was little likelihood that such streets and squares would ever be abandoned by the public. When such streets were infrequently abandoned, the courts looked with disfavor upon claims of private ownership:
"... We think it may be safely asserted that much harm may result from the retention in remote dedicators of the fee in narrow strips of land, valueless for many years, because of their public or quasi-public use which, on the abandonment of such use, become valuable for private purposes. Certainly such agreements are likely to be productive of disputes and litigation." Richard v. City of New Orleans, 195 La. 898, 928, 197 So. 594, 603-604 (1940).
See also Wilkie v. Walmsley, 173 La. 141, 136 So. 296 (1931). Arising out of this context, there can be little doubt that the legislative intent advanced by Act 134 was to retain the jurisprudential rule that dedication of municipal streets vested ownership in the public. The jurisprudence is now well settled that a statutory dedication vests full ownership in the municipality, parish, or State of Louisiana, depending upon where the street or road is located. Pioneer Production Corp. v. Segraves, 340 So.2d 270 (La.1976); Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965); Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229 (1938). See also Chevron Oil Co. v. Wilson, 226 So.2d 774 (La.App.1969).
*856 Further support for the rule that statutory dedication vests ownership in the public is provided by Act 151 of 1910 (now substantially embodied in R.S. 48:701), which gave parishes and municipalities the authority to revoke the dedication of streets to public use. Upon revocation, the ownership of the property underlying the streets was to revert to the contiguous landowners. This statute obviously is based upon a legislative assumption that dedication of streets to public use vests ownership in the municipality or parish. Martin v. Fuller, 214 La. 404, 37 So.2d 851 (1948). The parties to the present case do not dispute the effect which has been given to Act 134. Indeed, when the jurisprudence has consistently established a uniform interpretation of a statute that governs property rights, that jurisprudence constitutes a "rule of property" which must be followed absent a legislative mandate to the contrary. St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169 (1947); Daigle v. Calcasieu Nat. Bank in Lake Charles, 200 La. 1006, 9 So.2d 394 (1942); Frost-Johnson Lbr. Co. v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922); Cunningham v. Steidman, 133 La. 44, 62 So. 346 (1913); Lepine v. Marrero, 116 La. 941, 41 So. 216 (1906); Levy v. Nitsche, 40 La.Ann. 500, 4 So. 472 (1888); Otho Farmer's Heirs v. Fletcher, 11 La.Ann. 142 (1856).
In order to effect a statutory dedication, complete and detailed compliance with the statute is not required; substantial compliance will suffice. Parish of Jefferson v. Doody, supra; Metairie Park v. Currie, 168 La. 588, 122 So. 859 (1929). In the present case, the plats filed in 1905 fail to conform with the provisions of Act 134 in several respects. The plats were not recorded prior to the first sales, as required by § 1 of the act; all of the streets shown on the plats are not named, as required by § 1(4); and the plats contain neither a surveyor's certificate nor a formal dedication, as required by § 1(6) and (7). In all other respects, the plats satisfactorily meet the provisions of the act.[3] In Parish of Jefferson v. Doody, supra, the court concluded that the failure to include a surveyor's certificate and a dedicatory clause did not prevent the plat from being in substantial conformity with the law. The omission of a surveyor's certificate was ruled to be insignificant because it did not "render ineffective the plain intent of the subdivider to irrevocably dedicate the streets," 247 La. at 855, 174 So.2d at 803. Similarly, the absence of a dedicatory clause was found to be insubstantial because the court believed that:
"... implicit in the act of filing of a plan of subdivision in the map book of the parish, showing squares, lots, streets, alleys and walkways, is the intent on the part of the subdivider of dedicating the streets, walks and alleys to the public use...." 247 La. at 854, 174 So.2d at 803.
In 1929 this court considered the effect of the absence from the plat of a formal act of dedication of the streets in Metairie Park v. Currie, supra. The only penalty under the statute, said the court, was a fine on the owner, and the streets became dedicated as soon as a lot was sold in accordance with the plat:
"Defendant seems to contend that the owner of the subdivision is required by Act 134 of 1896 to imprint upon the map a formal act of dedication. If this be the case, the only penalty incurred under the statute for failure to comply with this requirement is a fine to be imposed on the owner or his agent. The title to the lot purchased is not affected by failure to observe this requirement of the statute, and, as the streets are shown and named in the Zander plan, they become dedicated to public use as soon as a lot is sold in accordance with the plan. Jaenke v. Taylor, 160 La. 109, 106 So. 711." 168 La. at 595, 122 So. at 862.
In the present case, the trial court ruled that the subdividers achieved substantial *857 compliance with the statute, despite the plats' insufficiencies. The Court of Appeal overturned this conclusion chiefly on the ground that there was "no proof that the Barbers were responsible for the recordation." 378 So.2d at 949.
If the fact of dedication is doubtful, "the conduct of the parties in interest ... may be considered as corroborative evidence." City of Alexandria v. Thigpen, 120 La. 293, 297, 45 So. 253, 255 (1907). A search of the record reveals that in at least one instance prior to 1905 the Barbers made a sale that referred to an unrecorded plat. In a sale executed on 10 December 1902, Austin and Amanda Barber sold to Robinson Coleman a parcel of land in Barber's Addition; the deed describes the tract and recites that it was "named in unrecorded plat as lot sixteen." The description and designation of this lot accurately follow the plat of Barber's Addition that was subsequently filed in 1905. This evidence is conclusive proof that the Barbers were aware that the plats existed; it is circumstantial proof that the Barbers were responsible for preparing the plats. The record also reveals that in sales made prior to 1905, the Barbers consistently designated the lot and block number of the property sold, in precise conformity with the plats later filed. This fact further substantiates the idea that the Barbers caused the plats to be prepared prior to making any sales.
Furthermore, after the recordation of the plats in 1905, many of the sales made by the Barbers were "according to plat," some of them designating the number of the page and book of conveyances where the plats could be found.[4] Rather than disavow the plats, the Barbers expressly relied upon them in marketing their property, ratifying the filing and dedicating the streets.[5]
The 1905 plats have been official records for more than thirty years. They qualify as "ancient documents." R.S. 13:3729. According to R.S. 13:3730, it is "unnecessary to prove the execution of such a document, the mere fact of such instrument having been recorded for a period of thirty years, as herein provided, being sufficient to establish a prima facie presumption of the execution and of the genuineness of such instrument." The plaintiffs have presented no proof sufficient to overcome this presumption; in fact, the use which their ancestors made of the plats after they were filed is supportive of the presumption. See Carrollton Railroad Co. v. Municipality No. Two, 19 La. 62 (1841).
Because the Court of Appeal was in error in determining that there was no proof that the Barbers filed the plats in question or subsequently ratified the filing, there is no need to address the issue of nonstatutory dedication.[6] It is enough that *858 the plats were filed in substantial compliance with Act 134, and that the plaintiffs' ancestors in title, rather than objecting to or disavowing the plats, expressly relied upon them in their transactions involving the property. To conclude that the Barbers did not intend to statutorily dedicate the streets is to indulge in speculation that the record does not justify.
In holding that the City of Jennings has title to the disputed property underlying the streets shown on the plats, it follows that the city's mineral lessees are entitled to be maintained in their leases. However, there is some discrepancy in the record as to Carter Street, which does not appear on either plat, and another road described by the plaintiffs as "the former road running south from South Street." No statutory dedication has been proven as to these roads. In 1924, Amanda Barber sold a tract of land adjoining the latter road, designating the road as the eastern boundary line of the tract. Under R.S. 9:2971, a conveyance in these terms creates a conclusive presumption that the vendor is transferring all interest in the road, up to the center line, to the vendee. Despite the fact that the legislature intended this provision to have retroactive effect (see R.S. 9:2972), no such effect has been given it. State of Louisiana, through the Department of Highways v. Tucker, 247 La. 188, 170 So.2d 371 (1965). We do not rule on the correctness of this decision; instead, we note that the statute cannot avail to the city's benefit in any case, since the city was not the vendee. Moreover, the language of the act of sale does not evidence an intent to convey ownership to the public body, nor does it fall within the category of a formal dedication. The City of Jennings, on the record before us, does not have a legitimate claim to the ownership of this property; nor can it claim anything other than a servitude over the property underlying Carter Street, which was never statutorily or formally dedicated to public use. Because the city has neither the ownership of the two properties nor an "executive interest" in the mineral rights, it cannot validly grant a mineral lease over the two streets. R.S. 31:15-16, 116. The city's lessees cannot be maintained as to these two strips of land.
The judgment of the Court of Appeal is reversed; it is ordered that the City of Jennings be recognized as the owner of the streets shown on the plats and described in the decision below. 378 So.2d at 951-952. The city, however, is not to be recognized as the owner of Carter Street or the former road running south from South Street, which do not appear on any recorded plat. It is further ordered that the lessees and assignees of the City of Jennings be maintained in their mineral interests as to the property owned by the city; and that the plaintiffs' lessee-assignees are entitled to cancellation of that portion of the lease which the city granted over property that it does not own. The matter is remanded to the trial court for an accounting of all sums that may be due to plaintiffs, consistent with this decision. The plaintiffs are cast for costs of these proceedings.
NOTES
[*] Watson, J. recused. Judge Pike Hall, Jr., Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] Until 1913, Jefferson Davis Parish (where Jennings is located) was a part of Calcasieu Parish, and all mortgage and conveyance records were kept in the Calcasieu Parish Courthouse.
[2] The provisions of Act 134 of 1896 were substantially reenacted by Act 80 of 1922; both acts were repealed and supplanted by Act 51 of 1930. The major provisions of Act 134 are now embodied in R.S. 33:5051.
[3] It is argued that the plats do not show that the Barbers were responsible for filing them. No requirement for such formality is found in Act 134 of 1896; there is a requirement for a "formal dedication made by the owner" of all streets, etc.
[4] A partial list of post-1905 sales in which the Barbers made reference to recorded plats follows. Although Amanda Barber is designated as the vendor in all but one of the sales, the sales regularly recite that she is "authorized," "aided" or "assisted" by her husband Austin Barber, who also signed all of the deeds "to authorize my wife."

Except for one or two sales, which refer to a "subdivision,", these deeds convey land in "Barber's Addition." However, the "Addition" and the "Subdivision" were commonly interchanged in describing the property. E. g., the following sales use the terms "as per plat" or "according to plat:"
Amanda E. Barber to William Allen (1906);
Amanda E. Barber to Thomas Brown (1907);
Amanda E. Barber to Emma Daniels (1909);
Amanda E. Barber to The City Lodge No. 113 Knights of Pythias (1911);
Austin M. Barber to Ellinor Simpson (1913);
Amanda E. Barber to Alfred East (1914);
Amanda E. Barber to Joe Reed (1919);
Amanda E. Barber to Frances Chavis (1921);
Amanda E. Barber to Ida Jones (1922);
Amanda E. Barber to Phyllis B. Edwards (1924);
Amanda E. Barber to John Reed (1929);
Amanda E. Barber to Josephine Taylor (1931).
This list is not exhaustive. The records also indicate that one of the plaintiffs in this action sold property in Barber's Addition "as per plat of record." Sale by Mrs. Ella Elliot, Lewis M. Barber and Mrs. DeEtte Barber Garrett to Odessa Henry (1948).
[5] Had the Barbers wished to retain ownership of the soil underlying the streets, they could have filed plats with an express stipulation to that effect. Wilkie v. Walmsley, supra.
[6] The defendants have alternatively argued that the sale of lots with reference to a recorded plat effects a "formal," nonstatutory dedication, vesting ownership in the public. See, e. g., Richard v. City of New Orleans, supra; Metairie Park v. Currie, supra; Jaenke v. Taylor, 160 La. 109, 106 So. 711 (1925); Ross v. City of Covington, 271 So.2d 618 (La.App.1972), writ denied 273 So.2d 844 (La.1973) ("On the facts found by the Court of Appeal, there is no error in the judgment of the Court of Appeal."); Banta v. Federal Land Bank of New Orleans, 200 So.2d 107 (La.App.1967), writ denied 251 La. 46, 202 So.2d 657 (1967) ("The judgment complained of is correct."); Esposito v. Gaudet, 8 So.2d 783 (Orl.La.App.1942); Kemp v. Town of Independence, 156 So. 56 (La.App. 1934); Sliman v. Mayor and Board of Aldermen, 145 So. 410 (La.App.1933). See also A. Yiannopoulos, Property § 63, 2 La.Civ.Law Treatise (2d ed. 1980); Comment, "The Third Dimension of Dedication in Louisiana," 30 La. L.Rev. 583 (1970). However, in James v. Delery, 211 La. 306, 29 So.2d 858 (1947), this court held that when property is sold with reference to a subdivision map, the owner creates a servitude of passage over the streets shown on the map. Earlier cases have been entirely ambiguous as to the nature of the right acquired by the public when a subdivider sells with reference to a recorded plat. Iseringhausen v. Larcade, 147 La. 515, 85 So. 224 (1920); Flournoy v. Breard, 116 La. 224, 40 So. 684 (1906).