PCHEHARDY, Judge.
This is a suit to determine whether the plaintiff church and its members have the right to use an unpaved portion of Myrtle Street in Boutte, St. Charles Parish, which extends between property owned by the plaintiff and property owned by the defendant. The trial court ruled in favor of the plaintiff. We affirm.
On September 30,1997 Boutte Assembly of God, Inc. filed suit against Gary J. Champagne, alleging that the defendant had blocked the plaintiffs access to its property by erecting a fence across Myrtle Street in 1997. The plaintiff asserted that Myrtle Street runs between lots owned by the plaintiff (Lot C) and the defendant (Lot D) and ends at another lot owned by the plaintiff (Lot 4).
The plaintiff alleged that the acts conveying Lot C to the plaintiff and Lot D to the defendant refer to each property as fronting on Myrtle Street and that all the conveyances in the parties’ respective chains of title were made with specific preference to and in accordance with a 1955 survey that shows both Lot C and Lot D as fronting on Myrtle Street. In addition, the plaintiff stated that it has continuously used Myrtle Street to access Lot C and Lot 4 since it acquired title to them.
The plaintiff further alleged that on December 8, 1953 the St. Charles Parish Police Jury voted to accept Myrtle Street as a public street to be incorporated into the parish road system and to be maintained by the police jury after that date; that Myrtle Street has been used by the public as a street since 1953; and that it has been maintained by the governing authority of St. Charles Parish for more than three years.
The plaintiff sought a declaration that Myrtle Street is a public street, either by reason of the 1953 parish ordinance refer *621 ring to it or by tacit dedication or, alternatively, a ruling that a servitude of passage exists in the plaintiffs favor. The plaintiff also sought an order for removal of the fence erected by the defendant, an injunction against erection of any obstructions in the future, and damages.
The defendant responded with a peremptory exception of prescription, asserting that if any servitude ever existed on that portion of Myrtle Street, it prescribed by nonuse for 10 years. After a hearing, the exception was denied. The trial court stated in written reasons for judgment that the defendant had not met his burden of proof, because there was a significant question as to whether the street was ever dedicated to the parish and the defendant also failed to prove that ten years elapsed without public use.
|4The defendant then filed an answer, in which he asserted that the portion of Myrtle Street that is the subject of the lawsuit has been in possession of the defendant and his family since 1945 and that the defendant has acquired it by virtue of 30 years’ adverse possession.
After trial on the merits the district court ruled in favor of the plaintiff, declaring that Myrtle Street is a public street and that it was impliedly dedicated for public use. The court ordered the defendant to remove any obstructions and enjoined him from erecting future obstructions. The court denied any further relief and assessed the parties their own costs.
In written reasons for judgment the court found that Myrtle Street had been impliedly dedicated to the parish because the defendant’s father had divided the land into lots, designated the street on a map, and sold portions of the property with reference to the map. The court pointed out that in each conveyance the properties known as Lot C and Lot D were identified as fronting on Myrtle Street. In addition, the court cited evidence that the parish paved Myrtle Street in both 1977 and 1998 and installed subsurface drainage in 1998 and that Myrtle Street was used as a public street until the defendant installed the fence in 1997.
The defendant appeals. He contends the trial court erred in failing to maintain his exception of prescription, in finding that Myrtle Street was used as a public street, in finding that the parish paved it in 1977 and 1998 and installed subsurface drainage in 1998, and in failing to address the defendant’s claim of acquisition of the extension either by quitclaim deed or by acquisitive prescription of 30 years.
I .EVIDENCE
At trial Pastor Bob Willis testified that he was pastor of Boutte Assembly of God from 1985 to 1994. He testified that Myrtle Street runs from Highway 90 back to the church’s property and stops there, while Breaux Street runs perpendicular to and ends at Myrtle Street. He testified that any time the church had work done, the workmen with heavy equipment would enter the property by the Myrtle Street entrance. They used Myrtle Street four to six times a year.
Willis testified he never asked anyone’s permission to use the street because he did not think there was a need to do so. He said that Myrtle Street is the only access the church has for vehicles to get to the rear of its property. Willis said that the defendant cut grass on the part of the church’s lot next door to his house and Willis gave him permission to park his boat there.
Pastor Steve Marze[1] testified he has been pastor of the church since June 1995 and is familiar with Lot C. Currently it is leased out and the lessee has four house trailers on it. He stated the church hires *622 someone to cut grass on the property when notices are received that it needs to be cut. He has gone onto the property five or six times a year. He always drove off of it on Myrtle Street or walked down there. Now, however, the way is blocked by the fence erected by the' defendant.
Marze denied that he ever asked the defendant for permission to go on the property, but just went on it. He said the church has no access to its property other than by the extension of Myrtle Street.
IfiThomas J. Champagne testified that he is the defendant’s brother. His father owned all of the land from which the property involved here was taken. The family home was and still is located on what is now known as Lot D, the defendant’s lot. Thomas Champagne bought the house from the estate after his father died in 1966. In 1977 he sold it to his brother, Gary Champagne, the defendant.
Thomas Champagne testified that Myrtle Street was developed before Breaux Street. To get to his father’s house they took Myrtle Street all the way to the dead end. From the dead end straight up was his father’s lot. It dead-ended at the intersection of Breaux Street and straight ahead was the driveway to the house. He testified further that there was never any traffic through that street because there was “nowhere for it to go.” A barbed wire fence originally was on the eastern end, with a field on the other side that is now the church property.
He said that while he owned the house from 1966 to 1977, no one other than the family used that Myrtle Street extension. He testified that before the property was subdivided there was no Breaux Street. His father sold Lot C to the witness’ uncle, Milton Champagne, and gave him a right-of-way, an easement, to get on it. His uncle Milton would come from the end of Myrtle Street and go on to his property.
Thomas Champagne testified that the school bus never comes down Myrtle Street, but turns on Breaux Street, and that delivery trucks do not use it either. He acknowledged that the parish had installed new sub-surface drainage in the area a year or a year-and-a-half before the trial. In doing the work,- he said, the parish cleaned out the ditches, built a trap basin, put in a culvert, built concrete barriers |7on each side, and asphalted everyone’s drive. He admitted, however, the parish did not asphalt the defendant’s drive.
Finally, Thomas Champagne identified a quit-claim deed, in which he and other family members purported to transfer to Gary Champagne the disputed portion of Myrtle Street, which Thomas Champagne referred to as “the extension.” He claimed that it was not part of Myrtle Street but was part of his property because his property started at Lot C.
Gary Champagne, the defendant, testified that he has lived on Lot D, which he acquired from his brother, for 22 years. The house is the one in which he grew up. He said he is the only person who ever really uses the extension of Myrtle Street and it is his driveway. When he bought the property from his brother there was a barbed wire fence separating it from the church’s property, but he took it down so he could cut the grass on the other side. Bob Willis told him he could use the property if he wanted. The defendant said he parked his boats on it and every time he cut his grass he cut the church’s grass, probably for 20 years, until he had a “run-in” with “Mr. Meyers” (sic)[2] after he let them come across to cut some trees. They hauled the trees across his property while it was raining and cut up his yard. He stopped them and they called the police.
He testified he has not known of anyone else using the area to get access to the church property. He said they have been using the lot next door to get to it. He denied that the parish had done any asphalting on his property.
*623 The parties submitted in evidence numerous documents tracing the chain of title in both the plaintiff and the defendant back to the acquisition of the property | sby the defendant’s father, Wilbert J. Champagne, in purchases from Alfred 0. Rappe-let (1945) and Elva L. Breaux (1946). Both Lot C and Lot D were subdivided from the larger tract of land thus acquired, pursuant to a 1955 survey. The document trail shows that, beginning in 1955, Lot C changed hands numerous times until it was sold to the plaintiff in 1996. Lot D, on the other hand, continued to be owned by Wilbert Champagne until his death, when it was transferred to his heirs (including defendant) by a judgment of possession in 1966. The heirs sold Lot D to the defendant’s brother, Thomas Champagne, that same year; the defendant purchased Lot D from his brother in 1977 and has owned it since that time.
All the transfers of both Lot C and Lot D since 1955 were made with specific reference to and in accordance with a February 3, 1955 survey by E.M. Collier entitled “Sub-Division of Portion of the Land of W.J. Champagne at Boutte — St. Charles Parish, La. in Section 93-T13S-R20E.” The Collier survey shows that the eastern sidelines of both Lot C and Lot D abut Lot 4 and that Lots C and D are directly opposite each other on Myrtle Street. In every transaction since 1955, Lots C and D each are described as fronting on Myrtle Street.[3]
|gThe defendant also submitted a May 21, 1999 quitclaim document signed by his mother and siblings, transferring to him their right, title and interest in “the extension of Myrtle Street ... bounded on the north by Lot ‘C’ and on the south by Lot „ [4]
The plaintiffs submitted a certified copy of the minutes of the St. Charles Parish Police Jury on December 8, 1953, in which the Police Jury accepted a dedication of a portion of Myrtle Street by E .L. Breaux. The plaintiffs admitted that it did not affect the portion in question, but offered it to show that the “front portion” of Myrtle Street (that is, the portion running from *624 Highway 90 several hundred feet back towards the parties’ property) had been dedicated and that it was accepted,by the parish.
|1flLAW AND ANALYSIS
La. C.C. Art. 457 provides,
A road may be either public or private. A public road is one that is subject to public use. The public may own the land on which the road is built or merely have the right to use it. A private road is one that is not subject to public use.
A private road may become subject to public use through dedication, however. Although Louisiana has never enacted a comprehensive scheme of dedication to public use, Garrett v. Pioneer Production Corporation, 390 So.2d 851, 854 (La.1980), Louisiana courts have recognized four modes of dedication: formal, statutory, implied, and tacit. St. Charles Parish School Bd. v. P & L Inv. Corp., 95-2571 (La.5/21/96), 674 So.2d 218, 221.
A landowner may make a formal dedication of a road by virtue of a written act, such as a deed of conveyance to the police jury of the parish.... The written act may be in notarial form or under private signature.... A formal dedication transfers ownership of the property to the public unless it is expressly or impliedly retained.... If the landowner retains ownership of the property, the public acquires a servitude of public use.
Statutory dedication occurs when a landowner subdivides real estate in accordance with the requirements of La.R.S. 83:5051. In order to effect a statutory dedication, complete and detailed compliance with the statute is not required; substantial compliance will suffice.... La.R.S. 33:5051 provides for the subdivision of real estate into squares or lots with named streets and for the dedication to public use of all streets, alleys, and public squares on the map. A statutory dedication vests ownership in the public unless the subdivider reserves ownership of streets and public places and grants the public only a servitude of use....
Implied dedication is a common law doctrine recognized by the courts of this state.... A dedication by implication consists of the assent of the owner, use by the public, and maintenance by the municipality.... |nBecause implied dedication lacks the formalities and safeguards of formal or statutory dedication, courts have required “a plain and positive intention to give and one equally plain to accept.”.... Courts have also found an implied dedication when the owner of a tract of land subdivides it into lots, designates streets or roads on a map, and then sells the property or any portion of it with reference to the map.... An implied dedication establishes a servitude of public use....
A tacit dedication of a strip of land for use as a public road occurs when the requirements of La.R.S. 48:491 are met....
If a road is maintained for a period of three years by authority of the parish governing authority, the public acquires a servitude of passage by tacit dedication.... Token maintenance or an occasional brushing up of a road is insufficient to establish a tacit dedication for public use. [Citations omitted.]
St. Charles Parish School Bd. v. P & L Inv. Corp., supra, at 221-222.
The public or private status of a roadway is a factual question that may not be disturbed on appeal absent a showing of manifest error. Lincoln Parish Police Jury v. Davis, 559 So.2d 935, 938 (La.App. 2 Cir.1990).
The trial court found there was an implied dedication of Myrtle Street, which resulted in a servitude of public use of the street, and that the servitude had not pre *625 scribed by nonuse. Although we agree with the result, we base our decision on a different legal basis.
The section of Myrtle Street between Lots C and D was never formally dedicated. However, we find there was a statutory dedication under La. R.S. 33:5051. That statute provides, in pertinent part:
A. Whenever the owner of any real estate desires to lay off the same into squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, |1?he shall, before selling any square or lot or any portion of same:
(1) Cause the real estate to be surveyed and platted or subdivided by a licensed land surveyor into lots or blocks, or both, each designated by number.
(2) Set monuments at all of the corners of every lot and block thereof.
(3) Write the lot designation on the plat or map, and cause it to be made and filed in the office of the keeper of notarial records of the parish wherein the property is situated and copied into the conveyance record book of such parish, and a duplicate thereof filed with the assessor of the parish, a correct map of the real estate so divided.
B. The map referenced in Subsection A of this Section shall contain the following:
(1) The section, township, and range in which such real estate or subdivision thereof lies according to government survey.
(2) The dimensions of each square in feet, feet and inches, or meters.
(3) The designation of each lot or subdivision of a square and its dimensions in feet, feet and inches, or meters.
(4) The name of each street and alley and its length and width in feet, feet and inches, or meters.
(5) The name or number of each square or plat dedicated to public use.
(6) A certificate of the parish surveyor or any other licensed land surveyor of this state approving said-map and stating that the same is in accordance with the provisions of this Section and with the laws and ordinances of the parish in which the property is situated.
(7) A formal dedication made by the owner or owners of the property or their duly authorized agent of |13all the streets, alleys, and public squares or plats shown on the map to public use.
Detailed compliance with the requirements of the act is not essential in order to effect a statutory dedication. Jefferson Parish v. Doody, 247 La. 839, 174 So.2d 798, 803 (1965). “[A] statutory dedication vests full ownership in the municipality, parish, or State of Louisiana, depending upon where the street or road is located.” Garrett v. Pioneer Production Corp., 390 So.2d 851, 855 (La.1980). “A party cannot deny the dedication of a public street when his. ancestors in title have sold property which they refer to as bounded by a public street.” Brungardt v. City of New Orleans, 562 So.2d 1126, 1130 (La.App. 4 Cir.1990), writ denied, 567 So.2d 613 (La.1990).
“[I]mplicit in the act of filing of a plan of subdivision in the map book of the parish, showing squares, lots, streets, alleys, and walkways, is the intent on the part of the subdivider of dedicating the streets, walks and alleys to the public use.” Jefferson Parish v. Doody, supra. A statutory dedication is complete and irrevocable even where there is no exercise or use of the dedicated property by the public. Best Oil Co. v. Parish Council of East Baton Rouge Parish, 176 So.2d 630 (La. App. 1 Cir.1965), writ refused 248 La. 365, 178 So.2d 656 (1965). Such streets become dedicated to public use as soon as a lot is sold in accordance with the plan. Metairie *626 Park v. Currie, 168 La. 588, 122 So. 859, 862 (La.1929).
In this case, it is clear that both the plaintiff and the defendant trace their titles of Lots C and D by transfers made with reference to the February 3, 1955 Collier survey in which the lots are shown as divided by Myrtle Street and are described as fronting on Myrtle Street. Every transfer of these lots from 1955 to the present makes that reference and description.
luWe find the 1955 Collier survey was in substantial compliance with the requirements of La. R.S. 33:5051, in that it was performed before the subdivided lots were sold; it was made by a licensed land surveyor (evidenced by Mr. Collier’s official stamp); it showed subdivision of the land into lots designated by numbers (or, in this case, letters). Further, although it is not evident whether it was filed in the parish notarial records prior to the first sale of any of the lots, it was filed in the records in conjunction with the sale of Lot B to Elva L. Breaux on February 16, 1955, as related in the property description in the subsequent sale to Milton Champagne on March 22, 1955. The 1955 Collier survey map further contains the section, township and range designation of the property, the dimensions of each lot, and the name of the street (Myrtle) as well as the street’s dimensions.
We find the above factors sufficiently comply with the statute to make the designation of Myrtle Street contained in the 1955 Collier survey a statutory dedication, resulting in public ownership of the bed of the roadway. The repeated transfers of Lots C and D by reference to the 1955 Collier survey with descriptions of the lots as fronting on Myrtle Street reinforce our conclusion that Myrtle Street was dedicated to the public. Jefferson Parish v. Doody, supra.
PRESCRIPTION AND QUITCLAIM ISSUES
In view of our conclusion that Myrtle Street was subject to a statutory dedication, prescription is inapplicable because the roadbed was owned by the public. Accordingly, we need not address the issues raised concerning prescription. Similarly, because the roadbed was owned by the public, the | ^quitclaim deed to defendant from his family members was of no effect, because Myrtle Street was not theirs to convey.
DECREE
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellant, Gary J. Champagne.

AFFIRMED.

McMANUS, J., dissents with reasons.

. This witness' name appears in the transcripts as "Steve Morris ." However, the trial judge and counsel for both parties refer to him as "Steve Marze” and that is the way he signed his name on the Act of Sale by which the plaintiff purchased Lot C in 1996. Accordingly, we refer to him as “Marze.”

. Apparently the court reporter mistran-scribed "Marze.”

. The property description for the first transfer of Lot C, from Wilbert Champagne to Milton Champagne in 1955, states:
A CERTAIN PORTION OF GROUND, together with all the buildings and improvements thereon, and all rights, ways, privileges, servitude and advantages thereunto belonging or in anywise appertaining, situated in nor [sic] near the Village of Boutte, Parish of St. Charles, State of Louisiana. According to a blue print of survey made by E.M. Collier, Surveyor, dated February 3, 1955 entitled "Subdivision of Portion of the Land of W.J. Champagne at Boutte, St. Charles Parish, Louisiana, in Section 93, T 13 S.R. 20 E.” copy of which is annexed to an act of sale by vendor herein to Elva L. Breaux, passed before the undersigned Notary on February 16, 1955 and registered in COB 9, Folio 321, the portion of ground conveyed herein is designated as Lot "C” and is more fully described as follows: it has a width fronting on Myrtle Street of Ninety-five and 9Üoo feet (95.95’), by a depth between equal and parallel lines of One hundred thirty-eight and )io feet (138.3') and a width in the rear of Ninety-five and 95/ioo feet (95.95’).
The first act specifically transferring Lot D is the 1966 judgment of possession in the Succession of Wilbert J. Champagne. It describes Lot D as follows:
A CERTAIN PORTION OF GROUND, together with all the buildings and improvements thereon, and all rights, ways privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in or near the Village of Boutte, Parish of St. Charles, State of Louisiana.
According to a blue print of survey made by E.M. Collier, Surveyor dated February 3, 1955 entitled "Subdivision of portion of the Land of W.J. Champagne at Boutte, St. Charles Parish, State of Louisiana, in Section 91, T 13 S, R 20 E,” a copy of which is on file in the Clerk of Court’s office in St. Charles Parish, the portion of ground conveyed herein is designated as Lot "D” fronts ninety-five and 95/ioo (95.95') feet on Myrtle Street, a width of ninety-five and 95/ioo (95.95') feet in the rear and a depth of two hundred ninety-one and % (291.6') feet between parallel and equal lines.

. This document was confected nearly two years after the inception of this lawsuit and shortly before the pre-trial conference was to be held.