466 So.2d 1336 (1985)
John DART, Liquidator of Verret Lands, Inc.
v.
Royce EHRET and Henry D. McNamara, Jr.
No. 84-CA-480.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1985.
Writ Denied May 13, 1985.
Henry Tutt Dart, New Orleans, for plaintiff-appellant, John Dart, Liquidator of Verret Lands, Inc.
Charles E. McHale, Jr., New Orleans, for defendant-appellee, Henry D. McNamara, Jr.
Nathan Greenberg, Greenberg & Dallam, Gretna, for defendant-appellee, Royce Ehret.
William J. Daly, Metairie, for defendant-appellee, W. Richard White.
Hubert A. Vondenstein, Parish Atty., James DeSonier, Larry J. Radosta, Byrne W. Dyer, III, Ferdinand M. Lob, Susan Roth, Paul Mayoral, Asst. Parish Attys., Gretna, for defendants-appellees.
Before CHEHARDY, KLIEBERT and GRISBAUM, JJ.
*1337 KLIEBERT, Judge.
This is an appeal by the plaintiff, John Dart, Liquidator of Verret Lands, Inc., from a judgment in favor of Royce Ehret, Henry McNamara, Jr., and the Parish of Jefferson, defendants. The plaintiff filed an action seeking to be declared the owner of a strip of land approximately seventy-five feet wide and eight hundred eighty-three feet long, located in the Parish of Jefferson. The trial judge found the filing of a subdivision plan in the conveyance records constituted a statutory dedication of the strip as a street and the subsequent abandonment of the street by the Parish transferred the strip from the Parish to the adjacent landowners, hence, he dismissed plaintiff's action. We affirm.
The strip of land in question here was part of a large tract of land acquired by Verret Lands, Inc. from Frank G. Brown by Act of Sale dated May 15, 1926. Subsequently, by Act of Sale dated August 24, 1931, Verret Lands, Inc., amongst other lands, sold to Mrs. August Hardy Wall land described as follows:
"Those certain portions or parcels of land situated in the Parish of Jefferson, State of Louisiana, in that part thereof designated as Section B and C, on a plan of survey of Oakdale Sub-Division, made by Frank B. Grevemberg, Civil Engineer, dated June 25, 1931, a copy of which is annexed to an act of deposit by Mrs. W.W. Wall, passed before John Dart, Notary Public, on August 24, 1931, and which lots and parcels of land are more particularly described as follows, to-wit:
* * * * * *
(f) A certain lot or parcel of ground designated on said plan as Farm Block No. 8, bounded on the North by Industry Street, on the West by Wall Boulevard, on the South by the right of way of the Missouri Pacific Railroad and on the East by an unnamed Street.
(g) A certain lot or parcel of ground designated on said plan as Farm Block No. 9, bounded on the North by Industry Street, on the South by the right of way of the Missouri Pacific Railroad, on the East and West by unnamed streets."
The Act of Deposit referred to as having the Grevemberg survey attached is not in the record. However, a copy of the Grevemberg survey, which is of record in the Parish of Jefferson, was placed in the record in Map Book 15, folio 24-0. The portion of the Grevemberg survey of 1931 showing Farm Lots 8 and 9 is reproduced as follows:
*1338 
This is part of the Grevemberg Plan dated June 25, 1931.
The area referred to as the "unnamed street" in the description of the lots in the Act of Sale and the strip in question here are the same, and on the survey it is that strip of land lying between Lots 8 and 9 and running North to South between Industry Street and the railroad. It was stipulated by the parties that the strip is unoccupied and was never actually used by *1339 the Parish of Jefferson as a street or right of way.
It is undisputed by the parties that through a direct chain of title emanating from Mrs. Wall's acquisition, above described, Ehret and McNamara acquired and were the owners of different portions of Lots 8 and 9 adjacent to and forming the western and eastern boundaries of the disputed strip. In order to readily identify the strip in question on the Grevemberg survey, we have shaded the adjacent areas owned by McNamara and Ehret.
The Parish of Jefferson, pursuant to and in accordance with the provisions of R.S. 48:701, by ordinance dated September 11, 1969, revoked the dedication of the "unnamed strip" and subsequently approved a re-subdivision of Lots 8 and 9 which apportioned one-half of the unnamed street to each lot. Verret Lands claims ownership by virtue of its acquisition from Frank Brown and denies any alienation. The defendants contend the recordation of the Grevemberg survey was a statutory dedication and under the provisions of R.S. 33:5051 conveyed ownership to the Parish of Jefferson, and the subsequent abandonment of the street by the Parish transferred title to the adjacent lot owners.
Plaintiff contends the trial court erred in:
(1) refusing to consider a prior ruling of another section of the Twenty-fourth Judicial District Court in LaBorde v. Verret Lands, Inc., No. 199-998, as rendering the defendants' contentions as to ownership of the disputed strip res judicata, (2) refusing to declare the Parish of Jefferson's prior recitations of lack of ownership in a right of way grant acted as an estoppel to claiming ownership of the disputed strip by dedication, and (3) finding that the recordation of the Grevemberg Survey in the conveyance records of the Parish of Jefferson substantially complies with the requirements of R.S. 33:5051, thereby constituting a statutory dedication of the disputed strip of ground to the Parish of Jefferson.
We will consider the first and second enumerated assignments of error together and first.
Civil Code Article 2286 provides as follows:
Art. 2286. Res judicata, essential elements
Art. 2286. The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
Counsel for defendants argues res judicata does not apply because the parties involved (plaintiff and defendants) and the things adjudged (the strips of land) are different. On the other hand, counsel for the plaintiff argues that although the strips of land are different, the thing adjudged in LaBorde and to be adjudged here is whether the recordation of the Grevemberg map constituted a statutory dedication of the strip to the Parish; therefore, the plea of res judicata should be upheld.
The jurisprudence is clear that all of the elements required by Civil Code Article 2286 must be present for the plea to be valid. The absence of any one of the three requires an overruling of a plea of res judicata. The doctrine of res judicata is stricti juris and any doubt as to the identity of claims must be resolved in favor of the parties against whom the plea is made. International Paper Co. v. Maddox, 5th Cir.1953, 203 F.2d 88.
In Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978), the Supreme Court reviewed the history of res judicata under Louisiana law and at page 156 said:
As a result of our civilian heritage, res judicata under Louisiana law is perceived to be much narrower in scope than its counterpart in common law jurisdictions. See 51 Tul.L.Rev. 611 (1977); Maloney, Preclusion Devices in Louisiana; Collateral Estoppel, 35 La.L.Rev. 158 (1974). Louisiana legislative authority for res judicata establishes a presumption *1340 of correctness and precludes relitigation of the object of the judgment only when there is (1) an identity of the parties, (2) an identity of "cause" and (3) an identity of the thing demanded. C.C. 2285-2287, 3556(31); Mitchell v. Bertolla, 340 So.2d 287 (La.1976); Sliman v. McBee, 311 So.2d 248 (La.1975); Scurlock Oil Co. v. Getty Oil Co., 294 So.2d 810 (La.1974). The absence of any of these identities is fatal to a plea of res judicata.
The major distinction between the case at bar and the LaBorde case is the fact that parties to this litigation are not the same as those involved in the LaBorde case. When the LaBorde decision was rendered, the ownership interest of Ehret and McNamara's predecessor in title was already vested for the ordinance abandoning the street had already been enacted. Since all parties were not present in that decision the only way the thing adjudged in La-Borde could affect Ehret and McNamara would be under some concept of the common law doctrine of "Collateral Estoppel." In essence, although referred to as a plea of res judicata, it is this common law doctrine which plaintiff's counsel urges when he argues the thing adjudged in LaBorde and to be adjudged here is the same and the Parish of Jefferson is estopped from claiming ownership here because of its prior recitations in a right of way grant. However, our supreme court has previously rejected the doctrine.
In Welch v. Crown Zellerbach Corp., supra, at pages 156 and 157, the organ of the Supreme Court said:
Collateral estoppel is a doctrine of issue preclusion alien to Louisiana law. Developed in the common law, the device precludes the relitigation of issues actually decided in a prior suit between the parties on a different cause of action. See Mitchell v. Bertolla, supra, and the authorities collected therein. Even among common law jurisdictions the doctrine is not applied uniformly since there are different theories on whether "mutuality" or an identity of parties is necessary. See Annot. 8 A.L.R.3d 1044 (1970).
Because of a basic difference between the meanings ascribed to the common law from "cause of action" and the civil law "cause" in res judicata, the doctrine of collateral estoppel is not susceptible of an orderly application in a jurisdiction utilizing civil law terminology. Under the common law, res judicata applied where there is an identity of parties and causes of action in both suits. See 51 Tul.L.Rev. 611 (1977). Unlike the limited meaning given "cause" in our system, "cause of action" encompasses all grounds upon which the claim might have been based. Collateral estoppel, developed to supplement common law res judicata, is therefore necessarily defined in terms which have different meanings when used in Louisiana.
The introduction of collateral estoppel into our system would effectuate a change fundamentally different from that established by ancient legislation. By choosing to define res judicata in narrow terms, the legislators apparently concluded that the inconvenience caused by relitigation is outweighed by the injustice of perpetuating erroneous judicial decisions. The adoption and application of an issue preclusion device which would broaden the operation of res judicata in Louisiana would subvert the original ideal established by codes.
While this court has on occasion recognized collateral estoppel in our system of law, no clear understanding of the application of that doctrine has been developed in the cases or in legal literature. Therefore, we hold that none of the variations of the common law doctrines of res judicata apply in Louisiana.
Also cf. First Guaranty Bank v. Durham, 409 So.2d 380 (4th Cir.1982), which held that res judicata is stricti juris and a second suit is not barred where there is any doubt about the application of Article 2286. Also cf. Lambert v. Maryland Casualty Co., 403 So.2d 739 (4th Cir.1981), affirmed 418 So.2d 553 (La.1982); Hancock v. Lincoln American Life Insurance Co., 278 So.2d 561 (1st Cir.1973), writ denied 281 So.2d 754 (La.1973).
*1341 Louisiana places great emphasis on the right of the citizen to seek judicial relief and this public policy far outweighs the problem of successive or multiple litigation. In Simon v. Broussard, 216 So.2d 668 (3rd Cir.1968), the court stated at pages 670 and 671:
"....Since this article of the Civil Code restricts the right of citizens to seek judicial relief, it is construed stricti juris, and an exception of res judicata will not be maintained if there is any doubt as to the correctness of its application."
Accordingly, we cannot say the trial judge erred in rejecting the plea of res judicata and the plea of estoppel.
We now turn our attention to the issue of whether the recordation of the Grevemberg map constituted a statutory dedication.
The Grevemberg survey was recorded in the Jefferson Parish conveyance records in Map Book 15, folio 24-0. It is directly behind a survey prepared by H.E. Landry which was dated April 6, 1949.
Mr. George Gillespie, a former deputy clerk of court testified that the Parish's indexing system does not indicate the date the surveys were filed nor were they in any kind of chronological order, hence, one could not determine from the map book when a particular survey was filed. As a counter to the testimony of Gillespie, the plaintiff qualified Alison J. Hogan as an expert abstractor of land titles who had been practicing continuously in Jefferson Parish for over 30 years. Mr. Hogan testified there is no way the present map or plan book can be used to determine when any plan of subdivision was filed in the office of the Clerk of Court. The fact one plan is presently located in the front of the book or in the back of the book has no bearing whatsoever on its filing date. The Grevemberg plan, on its face, does not show a filing date.
Mr. Hogan further testified that he knew, of his own knowledge, the Grevemberg plan had been of record in the office of the Clerk of Court for over 30 years. He examined numerous titles emanating from this plan and was very familiar with the plan. Mr. Hogan testified that the plan covers numerous subdivisions on the West bank, including Terrytown, Bellemeade, Timberlane Estates, Meadowbrook and many others, and many land sales in the area are described by reference to the Grevemberg Survey.
According to Hogan, when he first started abstracting titles in Jefferson Parish in the late 1940's, plans of subdivisions were scattered loosely among the archives of the Clerk's office and were not bound in any chronological date of filing. Additionally, Mr. Hogan said the Grevemberg plan was at one time attached to the act of sale by Mrs. William W. Wall to City Farms, Inc., dated January 6, 1933, before Nirma Keenan, Notary Public. His testimony in that respect was as follows:
"Q Now, in the act of 1933, wherein Mrs. Wall sold the lots that she acquired in 1931 to City Farms, Inc., would you examine this act to see if there is the plan of Mr. Grevemberg attached to this act?
A No, there was a plan attached to Miss Kennan's act of 1933, but, as you can see the plan has been torn out and misplaced."
According to Mr. Hogan, the removal of subdivision plans from the public records was not uncommon since some of the acts were loosely bound.
Verret Lands contends there was not sufficient compliance with R.S. 33:5051 for the mere recordation of the Grevemberg Plan to have constituted a dedication and transfer of the land to the Parish of Jefferson. The statutory dedication statute, R.S. 33:5051, provides as follows:
"Section 1. Be it enacted by the General Assembly of the State of Louisiana; That whenever the owner or owners of any real estate situated in this State shall desire to lay off the same into squares or lots with streets or alleys between such squares or lots and with the intention of selling or offering for sale any of said squares or lots it shall be the duty of such owner or owners of such real estate, before selling any *1342 square or lot or any portion of same, to cause to be made and filed in the office of the Keeper of Notarial Records of the parish wherein such property is situated and copied into the Conveyance Record book of such parish, a correct map of the real estate so divided, which said map shall contain the following:
1. The section township and range in which such real estate lies or subdivision thereof according to government survey.
2. The number of squares by numerals from 1 up, and the dimensions of each square in feet and inches.
3. The number of each lot or subdivision of a square and its dimensions in feet and inches.
4. The name of each street and alley its length and width in feet and inches.
5. The name or number of each square or plat dedicated to public use.
6. A certificate of the Parish Surveyor of the parish wherein the property is situated in the correctness of the map.
7. A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use.
Sec. 2. Be it further enacted, etc., That any person or persons, agent or attorney in fact who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction before the District Court shall be fined not less than ten dollars nor more than five hundred for each offense.
Sec. 3. Be it further enacted, etc., That it shall be the duty of all clerks and exofficio recorders and notaries public in all the parishes of this State, the parish of Orleans excepted, to refuse to place on record any deeds of sale of property coming under the provisions of this act, until the provisions of this act shall have been complied with; and to report to the District Attorney all violations of this act."
The plaintiff contends there was insufficient compliance with the provisions of R.S. 33:5051 to constitute a dedication in that there was no certificate of a Parish Surveyor, the owner made no formal dedication, the identity of the person who recorded the Grevemberg Plan and the date on which it was recorded are unknown, and Verret Lands never made any sale by reference to the Grevemberg Survey of record in Jefferson Parish. On the other hand, the defendants contend that all that is required is substantial compliance with the statute with a demonstrated intent to dedicate to effect a dedication.
The trial court relied on Garrett v. Pioneer Production Corp., 390 So.2d 851 (La. 1980), to conclude that substantial compliance with the above quoted statute, R.S. 33:5051, was present here. In Garrett, supra, the court held a dedication was effectuated even though it was unknown when and by whom the survey plans were placed of record in the conveyance office, the names of some streets were not shown in the plan, there was no certificate of a Parish Surveyor, and there was no formal dedication of streets. Nevertheless, the court concluded circumstantial evidence could be used to find an intent to dedicate and once found the recordation of the subdivision plan in the conveyance record was sufficient to effect the dedication.
Notwithstanding the strong similarity of facts here to those in the Garrett case, supra, plaintiff argues there was no intent by Verret Lands to dedicate the strip in question because it is not shown the subdivision plan was filed in the conveyance records by Verret Lands. He cites Conrad v. Reine, 240 So.2d 915 (4th Cir.1970) in support of his position. We note that the Conrad case, supra, predated the Garrett case, supra. As we understand the two cases, the dissenting opinion in the Conrad case actually became the majority view in the Garrett case. Hence, for all practical purposes the majority view in the Conrad case, supra, has been impliedly overruled.
As we view the record here, there is ample evidence showing an intent by Verret Lands to subdivide its land holdings and to sell subdivision lots. Verret Lands was in the business of selling subdivided lots and was actively doing so from the portion of the tract located in Orleans Parish when *1343 the 1930 depression occurred. According to the corporate resolution attached to the act of sale to Mrs. Wall in 1933, Verret Lands was in financial distress and facing a foreclosure which would have resulted in a total loss. It disposed of all of its holdings to Mrs. Wall to salvage what it could. Since the land had already been subdivided by the Grevemberg Survey Plan the Act of Sale to Mrs. Wall described the subdivided lots by reference to the Grevemberg Subdivision Plan rather than the entire tract of land. Although there was no showing the Grevemberg Subdivision Plan was attached to the Act of Sale conveying the lot from Verret Lands to Mrs. Wall, which was recorded in Jefferson Parish, the duplicate original of the same sale which was recorded in Orleans Parish did have the plan attached. An examination of the plan shows the strips lying between the subdivided lots, although unnamed, ran between developed streets and highways and obviously intended to be streets which separated and served the subdivided lots. In our view, the facts show a clear intent by Verret Lands to have the strip of land in question dedicated as a street.
Therefore, we cannot say the trial court erred in dismissing the plaintiff's suit. Accordingly, we affirm the judgment appealed from. All costs of the appeal are to be borne by the appellant.
AFFIRMED.