487 So.2d 647 (1986)
William Wall MORRIS
v.
PARISH OF JEFFERSON.
No. 85-CA-707.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1986.
*648 Henry Tutt Dart, New Orleans, for plaintiff-appellant.
Anthony R. Messina, Parish Atty., Byrne W. Dyer, III and Susan D. Roth, Asst. Parish Attys., Gretna, for defendant-appellee.
Before CHEHARDY, DUFRESNE and WICKER, JJ.
CHEHARDY, Judge.
William Wall Morris, in his capacity as duly-appointed liquidator of Verret Lands, Inc., sued the Parish of Jefferson regarding the ownership of a strip of land running between Belle Chasse Highway and Commerce Street in Oakdale Subdivision, Jefferson Parish. Morris sought a declaratory judgment that the strip had never been dedicated to the Parish, either statutorily or impliedly; that any servitude over the strip the Parish may have acquired had been abandoned; and that Verret Lands, Inc. was the owner of the property. The Parish filed a motion for summary judgment, which the trial judge granted. Morris has appealed.
At issue is whether the recordation of a subdivision map in the Parish records substantially complied with LSA-R.S. 33:5051, the statute under which streets may be dedicated to the public use. A statutory dedication vests full ownership in the municipality, parish, or state of Louisiana, depending upon where the street or road is located. Garrett v. Pioneer Production Corp., 390 So.2d 851 (La.1980).
R.S. 33:5051 provides,
"Whenever the owner of any real estate desires to lay off the same into squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, he shall, before selling any square or lot or any portion of same, cause the real estate to be surveyed and platted or subdivided by a licensed surveyor or civil engineer into lots or blocks, or both, each designated by number, and set stakes, which shall be permanent in nature, at all of the corners of every lot and block thereof, properly marked so as to designate the correct number of each lot and block; write the legal description of the land on the plat or map, and cause to be made and filed in the office of the keeper of notarial records of the parish wherein the property is situated and copied into the conveyance record book of such parish, and a duplicate thereof filed with the assessor of the parish a correct map of the real estate so divided, which map shall contain the following:
(1) The section, township, and range in which such real estate or subdivision thereof lies according to government survey.
(2) The number of squares by numerals from 1 up, and the diminsions of each square in feet and inches.

*649 (3) The number of each lot or subdivision of a square and its dimensions in feet and inches.
(4) The name of each street and alley and its length and width in feet and inches.
(5) The name or number of each square or plat dedicated to public use.
(6) A certificate of the parish surveyor or any other licensed surveyor or civil engineer of this state approving said map and stating that the same is in accordance with the provisions of this Section and with the laws and ordinances of the parish in which the property is situated.
(7) A formal dedication made by the owner or owners of the property or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map to public use."
In order to effect a statutory dedication, complete and detailed compliance with the statute is not required; substantial compliance will suffice. Garrett v. Pioneer Production Corp., supra.
The property involved is described as follows:
"THAT PORTION OF GROUND, together with all the rights, ways, servitudes, privileges and advantages thereunto belonging or in anywise appertaining, situated in Section C of Oakdale Subdivision, Parish of Jefferson, State of Louisiana, said tract of ground being bounded on the north by Belle Chasse Highway, on the east by Square 5, on the south by Commerce Street and on the west by Square 4. According to a survey by John E. Walker, Civil Engineer, dated April 14, 1981, beginning at a point where the northwest corner of Square 5 intersects with Belle Chasse Highway, said tract of ground measures in a northwesterly direction, 94.69' front on Belle Chasse Highway, to a point, thence in a southerly direction along the eastern boundary of Square 4, a distance of 883.81' to a point, thence in a southeasterly direction a distance of 94.69' fronting on Commerce Street to a point, thence in a northerly direction along the western boundary of Square 5, a distance of 883.81' to the point of beginning."
The Parish argues it is the owner of this strip of land by virtue of the recordation of a survey that the Parish contends constituted a statutory dedication of the strip of land as a street and also by virtue of the Parish's actual use of the land as a drainage canal.
The survey in question, known as the Grevemberg survey, bears the notation "Plan of Sections B & C, Oakdale Subdivision, F.B. Grevemberg, Civil Engineer" and is dated June 25, 1931. It is unknown when the map was filed into the public records of the parish or who recorded it. The disputed strip of land is shown on the Grevemberg map as an unnamed street between Industrial Sites 4 and 5, running from Belle Chasse Highway to Commerce Street. The strip has never been developed or used as a street; according to an affidavit filed by the Parish, the drainage canal in the center of the strip has existed since 1959.
The land involved is part of a much larger tract purchased by Verret Lands, Inc. from Frank G. Brown on May 15, 1926. At the time of that purchase no plan subdividing the property had been filed, therefore the strip was indistinguishable from the remainder of the tract. As mentioned above, the Grevemberg subdivision plan is dated June 25, 1931 but there is no record of when it was filed into the parish conveyance records.
On August 24, 1931 Verret Lands, Inc. sold to Mrs. Emma Augusta Hardy Wall a portion of the property it had acquired from Frank Brown. The property was described by reference to the Grevemberg map, which was mentioned as being attached to an "Act of Deposit" confected by Mrs. Wall on the same day. The sale included Farm Blocks 4 and 5 (now known as Industrial Sites 4 and 5) but made no mention of the strip of ground dividing Blocks 4 and 5. Morris asserts that this indicates title to the disputed strip was never transferred and that Verret Lands therefore remains the record owner of the property. *650 He contends that as record owner Verret Lands never dedicated the strip as a street, either statutorily or by implication.
According to the Parish, the filing of the Grevemberg map constituted substantial compliance with the requirements of LSA-R.S. 33:5051 and therefore the strip was statutorily dedicated as a street.
Morris, on the other hand, contends the filing of the Grevemberg map was not a statutory dedication of the streets shown on the map because the map does not substantially comply with the requirements of the statute in that there is no evidence to establish who filed the map or when it was filed in the public records, the streets shown thereon are unnamed, and there is no language formally dedicating the streets to public use.
The Parish filed a motion for summary judgment, asserting there were no genuine issues of material fact and that the Parish was entitled to judgment as a matter of law dismissing plaintiff's demand because the Parish owns the property by virtue of statutory dedication and of actual use.
In support of the motion, the Parish filed an affidavit by Al Hogan (a title abstractor familiar with the records involved), an affidavit by Red Olano (a former employee of the parish Drainage District), a copy of the Act of Sale dated August 24, 1931 from Verret Lands, Inc. to Mrs. Emma Augusta Hardy, Widow of William Winans Wall, and a copy of the Act of Sale dated January 6, 1931 from Mrs. Emma August Hardy, Widow of William Winans Wall, to City Farms, Inc.
In Al Hogan's affidavit, the affiant stated that he had been an abstractor for 35 years; that he was familiar with the August 24, 1931 Act of Sale between Verret Lands and Mrs. Wall and with the January 6, 1933 Act of Sale between Mrs. Wall and City Farms, Inc.; that the August 24, 1931 Act of Sale clearly refers to the Grevemberg map dated June 25, 1931 as "annexed to the act of deposit by Mrs. Emma August Hardy Wall"; that the Grevemberg map was filed in the Jefferson Parish Courthouse and recorded in the conveyance records in Map Book 15, Folio 24-0; that neither plaintiff nor defendant could determine when the map was recorded because there are no old courthouse records to indicate the date of its filing; that the January 6, 1933 Act of Sale from Mrs. Wall to City Farms, Inc. refers to the Grevemberg map as "annexed to the act of deposit by Mrs. Emma August Hardy Wall"; that in the past the Affiant had seen the Grevemberg map in Volume 511 of the Notarial Acts next to the Act of Sale between Mrs. Wall and City Farms, Inc., but that the Grevemberg map was no longer in Volume 511 and apparently had been torn out; that it was common custom and practice prior to the 1930's and thereafter until about 1954 the mere filing of a map that was referenced in an act of sale in the Jefferson Parish Conveyance Records fulfilled the requirements to statutorily dedicate streets.
In his affidavit, Red Hogan declared that he was a former employee of the Plaquemines Parish/Jefferson Parish Drainage District, before that district was divided into two districts; that he holds records identifying the canal on the disputed land on the unnamed street between Belle Chasse Highway and Commerce Street; that construction of that canal began on December 1, 1959; and that the canal has existed for 26 years.
In opposition, plaintiff filed his own affidavit, in which he asserted that Verret Lands, Inc. is the owner of the disputed strip of land, as shown on a survey by John E. Walker dated April 14, 1981; that he personally had visited the property on or about the date the survey was made and saw a drainage ditch or canal on a portion of the property, as shown on the Walker survey; that some time after that the Parish of Jefferson undertook, without authority from Verret Lands, Inc., to widen the canal to approximately the entire width of the strip; and that on January 12, 1981 deponent granted a servitude to the Parish over a similar "street" shown on the Grevemberg map, in which servitude the Parish specifically recognized Verret's ownership of the "street".
*651 Morris further asserted that in Laborde v. Verret Lands, Inc., No. 199-988 on the docket of the 24th Judicial District Court for the Parish of Jefferson, a case involving ownership of a similar "street," the Parish Attorney stipulated and made judicial confession that the "street" was owned by Verret and not by the Parish and that on January 16, 1979, the district court rendered judgment in that case in favor of Verret Lands, Inc., declaring Verret to be the owner of the "street" involved therein.
Morris apparently made the Laborde v. Verret Lands, Inc. judgment the basis for an exception of res judicata in the suit now before us.
The district court granted summary judgment in favor of the Parish. Four days later a second judgment was rendered, in which the court noted that it had denied plaintiff's exception of res judicata on a rehearing of the motion for summary judgment and reaffirmed the granting of the motion for summary judgment.
On appeal Morris asserts that the trial judge erred in granting summary judgment and that the judge should have found that Laborde v. Verret Lands, Inc., supra, was res judicata as to the question of the Parish's ownership.
LSA-C.C.P. art. 3654 states that when the issue of ownership of immovable property is presented in an action for a declaratory judgment the court shall render judgment in favor of the party who would be entitled to the possession of the immovable property in a possessory action (unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription) or in favor of the party who proves better title to the property when neither party would be entitled to the possession in a possessory action.
This court has already decided a lawsuit concerning another unnamed street shown on the Grevemberg survey. In Dart v. Ehret, 466 So.2d 1336 (La.App. 5 Cir.1985), writs denied 468 So.2d 575, the plaintiff was the liquidator of Verret Lands, Inc. (Apparently Dart has been replaced as liquidator by the present plaintiff, Morris.) Dart made the same contentions as to the land involved there (which was the strip of land between Farm Blocks 8 and 9), specifically, that LaBorde v. Verret Lands, Inc., supra, was res judicata as to ownership of the disputed strip and that the recordation of the Grevemberg survey did not substantially comply with the requirements of R.S. 33:5051. In addition, Dart contended that the Parish was estopped to claim the strip of land by its prior recitations of lack of ownership in a right-of-way grant.
In Dart, we relied on the case of Garrett v. Pioneer Production Corp., supra, which held that if the fact of dedication is doubtful, the conduct of the parties in interest may be considered as corroborative evidence. We found there was ample evidence showing an intent by Verret Lands to subdivide its land holdings and to sell subdivision lots, and that this demonstrated an intent to effect a dedication of the streets shown on the Grevemberg map.
In the Garret case the Supreme Court held a dedication was effectuated even though it was unknown when and by whom the survey plans were placed of record in the conveyance office, the names of some streets were not shown in the plan, there was no certificate of the parish surveyor and there was no formal dedication of the streets. The court, concluding that circumstantial evidence could be used to find an intent to dedicate, found that sales made with reference to the then unrecorded plat were conclusive proof that the vendors knew the plat existed and were circumstantial proof that those vendors were responsible for preparing the plats.
Although some of the facts and evidence offered in the Dart case differ from those offered here, we conclude it is clear that the strips were obviously intended to be streets. The unrebutted affidavits offered by the Parish, together with the sales made with reference to the Grevemberg survey, establish an intention by Verret Lands to dedicate the unnamed strips as streets at least as far back as 1931. We conclude there is no material question of fact and that as a matter of law the Parish was *652 entitled to judgment in its favor. Accordingly, summary judgment was properly granted.
As to Morris' contention that the Laborde judgment is res judicata, LSA-R.S. 13:4231 sets forth the requirements of res judicata:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
In the Dart case we concluded that res judicata was inapplicable because the parties to the litigation were not the same. (In Laborde, Verret Lands as the defendant had filed a third-party demand against the Parish of Jefferson. In Dart the defendants were Ehret and McNamara, owners of the lots adjoining the disputed strip, and the Parish.)
In that case as in this one, Verret Lands argued that res judicata applied because "the thing adjudged" was the same in both casesthat although the strips of land were different, the "thing adjudged" was whether the Grevemberg map constituted a statutory dedication of the strip to the Parish. As we stated in the Dart case, this argument was really based on the common law doctrine of collateral estoppel, which is inapplicable in Louisiana. See Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978).
It is well established that the principle of res judicata is to be strictly interpreted. Any doubt as to the identity of claims must be resolved in favor of the parties against whom the plea is made.
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment." R.S. 13:4231. The object of the judgment here is not the effect of the recordation of the Grevemberg survey but rather who has the better title to the strip of land between Industrial Sites 4 and 5. Although the effect of the recordation of the Grevemberg survey happens to be the major determinative factor in each case, the fact that the property involved in the Laborde case was a separate and discrete parcel of land makes res judicata inapplicable.
Further, we question whether a plea of res judicata can properly be raised by a plaintiff. In Boyd v. Bray, 327 So.2d 457 (La.App. 2 Cir.1976), the court ruled that a plaintiff cannot be allowed to end his own litigation by pleading the exception of res judicata.
For the foregoing reasons, the judgment of the district court is affirmed. Costs are assessed against the appellant.
AFFIRMED.